UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>A BLUE LEXUS ES350 BEARING VIRGINIA TEMPORARY TAG M22261 AND VIN NUMBER JTHBK1GG3F2168965 THAT IS CURRENTLY IN THE POSSESSION OF MPD IN WASHINGTON, D.C. | No. _____<br><br>UNDER SEAL |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION**
**UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Catherine Hanna, being duly sworn, hereby depose, and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a blue Lexus ES 350, bearing Virginia Temporary Tag MS22261 and VIN Number JTHBK1GG3F2168965, which is currently in the possession of the Metropolitan Police Department in Washington, D.C., hereafter, the "TARGET VEHICLE," further described in Attachment A.

2. I have been employed as a Special Agent of the Federal Bureau of Investigation since June 2003. I am currently assigned to the FBI Washington Field Office ("WFO") in Washington, D.C. I successfully completed New Agent training at the FBI Academy in Quantico, Virginia, which included extensive training on drug enforcement and criminal investigations. Since June 2006, I have been assigned to the FBI's Washington, D.C., Safe Streets Task Force, which investigates violations of federal drug, gang, and firearms statutes. I am responsible for investigations involving unlawful activities to include gangs and criminal enterprises, racketeering, firearm offenses, and violent crimes.

3. I have actively participated in investigations of criminal activity, including, but not limited to, the investigation of narcotics traffickers. I have conducted over two hundred interviews or debriefs with individuals associated with narcotics trafficking, and I am familiar with the methods narcotics traffickers use in this region. During these investigations, I have participated in the execution of arrest and search warrants and the seizure of evidence indicative of drug trafficking activities. As an agent of the FBI, I have testified under oath and participated in and gained experience in over fifteen Title III wiretap investigations for the enforcement of federal narcotics laws. I have also personally conducted and participated in investigations that have resulted in the arrests and convictions of individuals responsible for trafficking narcotics and committing violent crimes. As a Special Agent with the FBI, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; executing search warrants and arrest warrants which resulted in seizures of illegal narcotics, firearms, and other contraband; consensual monitoring and recording of both telephonic and non telephonic communications; analyzing telephone pen register and caller identification systems data; and conducting court authorized wire and electronic surveillance of telephones. In 2012, in the matter of *United States v. Mark Pray*, 10-cr-51-RMC, in the United States District Court for the District of Columbia, I was qualified as an expert witness in the interpretation of words and phrases used by narcotics traffickers.

4. Since this affidavit is being submitted for the limited purpose of obtaining search warrants, I have not set forth each and every fact learned during the course of this investigation. Facts not set forth herein are not being relied upon in this affidavit in support of the warrants. I make this affidavit based, in part, on my personal knowledge and observations derived from my participation in this investigation, information provided by other agents and law enforcement

officers, reports and data provided by other officers, which I have read and reviewed, and, in part, upon information and belief. The sources of my information and belief include, but are not limited to: a) oral and written reports regarding this and other investigations that I have received, directly or indirectly, from agents of the FBI, and officers of the Washington, D.C., Metropolitan Police Department (MPD); b) physical surveillance conducted by your affiant and other agents and officers who have reported to me directly or indirectly; c) witness interviews conducted by myself and other law enforcement agents and officers; and d) search warrants executed by your affiant and other agents and officers who have reported to me directly or indirectly by other agents.

5.      As a result of my personal participation in this investigation, as well as, through interviews with and analysis of reports submitted by other FBI agents and other law enforcement officers who are involved in this investigation, I am familiar with all aspects of this investigation.

## AFFIANT'S KNOWLEDGE, TRAINING, AND EXPERIENCE RELATING TO NARCOTICS OFFENSES

6.      In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies.

7.      Based on my knowledge, training, experience and participation in numerous other investigations involving marijuana, cocaine base, powder cocaine, heroin, and other controlled dangerous substances, I know that:

(a)     Narcotics traffickers keep narcotics, narcotics related items and paraphernalia, money, firearms, and firearm-related items in their residences, and/or their vehicles, and/or stash/storage locations, such as other apartments, garages, sheds, and storage lockers. In

addition, in an enterprise involved in the distribution and possession with intent to distribute crack cocaine, powder cocaine, heroin, or marijuana, these locations may also contain apparently innocuous materials that are used for specific purposes in the drug trade. For example, small and large plastic baggies are the packaging material of choice for many narcotics traffickers; scales are often used to ensure the quantities are commensurate with price, as well as to determine as accurately as possible the varying amounts of the drugs being sold; microwave ovens, pots, dishes, false bottom containers and other containers, cooking utensils, and cutting agents are often used to "cook" powder cocaine into crack cocaine, or to mix and dilute heroin, and transport it discreetly thereafter.

(b)     It is also common for narcotics traffickers to distribute from specific locations other than their own residences, to include vehicles, stash houses, the residences of family members and associates, both witting and sometimes unwitting, and other locations where trusted associates of the trafficker are allowed access, in order to protect the cache of drugs, as well as, the drug proceeds derived from the sale of these drugs.  Such locations provide security for the trafficker, and it is a known location where customers go to obtain drugs.

(c)     Drug traffickers often use and retain firearms and other weapons to protect themselves as well as to secure their cache of narcotics. Individuals who possess and store firearms in their residences, vehicles and/or stash locations, or in the residences of trusted associates, often also store ammunition, shell casings, slugs, targets, holsters, gun cleaning kits, and ownership papers.

## REQUESTED SEARCH WARRANT

8.     As described in greater detail below, on May 1, 2018, Dontae Robey (ROBEY) was indicted by a grand jury in 18-cr-122 (TJK) on conspiracy and narcotics trafficking charges

and a warrant was issued for his arrest by the Honorable G. Michael Harvey. On May 2, 2018, members of the D.C. Metropolitan Police Department arrested ROBEY on the outstanding warrant in the 700 block of S Street, N.W., Washington, D.C. At the time of his arrest, ROBEY was in possession of a Lexus car key. Police located that vehicle in the 1700 block of 7th Street, N.W. (*i.e.*, one-half block away) and an MPD K-9 Officer responded to the vehicle with his canine partner who gave an indication that the vehicle contained narcotics. The vehicle was towed to the Fourth District Police Station in Washington, D.C. Accordingly, as discussed in detail below, I believe that the TARGET VEHICLE is being used to commit the offenses of possession with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to commit such offenses, in violation of 21 U.S.C. § 846 (collectively, the "TARGET OFFENSES"), and there is probable cause to believe that within the confines of the "TARGET VEHICLE," as set forth more fully in Attachment A, respectfully, there exists evidence and instrumentalities of the TARGET OFFENSES, as set forth more fully in Attachment B.

## PROBABLE CAUSE

### November 19, 2017 Arrest of Dontae Robey and Kianna King

9. In my current work assignment, I am aware that Dontae ROBEY and Kianna KING were arrested by MPD on November 19, 2017, following a traffic stop of the vehicle that ROBEY was operating. I have reviewed the law enforcement paperwork from that arrest and MPD body camera video of officers who participated in that arrest, and the criminal histories of both arrestees. I am also aware that based on the circumstances of the arrest, a grand jury returned an indictment against KING (in United States District Court case number 17-cr-227 (TFH)) that charged KING with Unlawful Possession with Intent to Distribute 28 Grams or More

of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii) and Unlawful Possession with Intent to Distribute 100 Grams or More of Heroin, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(i). Your affiant was also present in the courtroom during the detention hearing held for KING on November 22, 2017, by the Honorable G. Michael Harvey. As a result of the aforementioned information, I have learned the following regarding the traffic stop of ROBEY and KING.

10. On November 19, 2017, members of the Metropolitan Police Department (MPD), Narcotics Special Investigations Division (NSID), effectuated a traffic stop in the 4200 block of Nannie Helen Burroughs Avenue, N.E., Washington, D.C. The vehicle stopped was a silver Infiniti bearing DC Tags ENV6610. The driver of the vehicle was ROBEY and the front seat passenger was KING. Inside the vehicle, officers observed marijuana and ROBEY had marijuana between his legs in the front seat.

11. During the course of the traffic stop, KING removed from her person crack cocaine that was concealed in her leggings. Subsequently, a female officer was brought to the scene and recovered from KING's leggings additional narcotics, to include heroin. In total, recovered from inside KING's leggings was approximately 95 grams of suspected crack cocaine and approximately 123 grams of suspected heroin (both measurements with packaging). KING was placed under arrest. The approximate weight of the narcotics recovered indicated that the narcotics were going to be sold to others rather than used exclusively by KING. In addition to the narcotics, MPD recovered a digital scale from the front-side passenger floorboard and $646 in U.S. currency from ROBEY's person when he was arrested.

12. The narcotics recovered from KING's person were analyzed by a forensic chemist with the Drug Enforcement Administration (DEA) who determined that, in sum, the narcotics

consisted of: (a) in excess of 100 grams of a mixture and substance containing heroin; (b) in excess of 28 grams of mixture and substance containing cocaine base (*i.e.*, crack cocaine); and (c) a detectable amount of cocaine.

13. During the traffic stop, KING claimed that she was going home to Jay Street and pointed to the direction of Jay Street, while ROBEY claimed that "they" were going to Maryland. When a law enforcement officer suggested that it was unlikely that all the drugs on KING's person belonged to her, KING said that she "found" the drugs and that they were "not his," meaning ROBEY.

14. ROBEY has three prior adult drug trafficking convictions (D.C. Superior Court case nos. 2007-CF2-18141, 2001-FEL-3553, 2000-FEL-4974) and an unlawful possession of a firearm conviction (D.C. Superior Court case no. 2007-CF2-22887).

15. In a search incident to arrest, MPD came into possession of four cellular telephones. On December 1, 2017, the Honorable Magistrate Judge Michael G. Harvey issued search and seizure warrants for those four cellular telephones, case number 17-mj-927.

16. Based upon the large quantities of narcotics, U.S. currency, digital scale, and cellular telephones present in the vehicle, ROBEY's criminal history, and the actions by KING to conceal her destination and to exculpate ROBEY from the narcotics recovered on KING'S person, I believe that KING and ROBEY were engaged in the trafficking of narcotics with each other and, possibly with one or more additional persons. In particular, based on my investigation, I believe that ROBEY handed the narcotics to KING to conceal for him at the time police pulled over the vehicle.

**Robey Indictment**

17.   On May 1, 2018, a grand jury indicted ROBEY on charges of: (1) Conspiracy to Distribute and Possess with Intent to Distribute One Hundred Grams or More of Heroin and 28 Grams or More of Cocaine Base in violation of 21 U.S.C. § 846; (2) Unlawful Possession with Intent to Distribute 100 Grams or More of Heroin, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(i); (3) Unlawful Possession with Intent to Distribute 28 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii); and (4) Unlawful Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C).

18.   On May 1, 2018, the Honorable G. Michael Harvey issued an arrest warrant for ROBEY.

19.   On May 2, 2018, members of the D.C. Metropolitan Police Department were in the area of the 700 block of Street, N.W., Washington, D.C. when they observed ROBEY. The officers knew ROBEY from prior interactions with him and were aware that he had an outstanding arrest warrant based on the recent indictment described above. Officers stopped ROBEY, he identified himself as Dontae Robey, and officers placed him under arrest.

20.   Search incident to arrest, officers recovered a Lexus key on ROBEY's person. Officer Gillespie asked ROBEY what the key belonged to and ROBEY stated that the key belonged to a white 2014 Lexus IS 250 that was registered to his girlfriend, who he identified as Donnita Jackson. ROBEY further stated that the Lexus vehicle was currently parked in Maryland.

21.   After ROBEY was transported from the scene, officers observed the TARGET VEHICLE parked on the west side of the 1700 block of 7th Street, N.W. Officers ran the TARGET VEHICLE'S temporary tag through a law enforcement database, which revealed that

the vehicle was registered to Donnita Jackson, the same individual who ROBEY identified as his girlfriend. In addition, the passenger and driver's side front windows were cracked and an odor of marijuana was emanating from the vehicle.

22. Officers requested the assistance of a K-9 Officer. A Metropolitan Police Department Officer and his canine partner arrived on scene. The canine who arrived is trained to detect the presence of narcotics. The K-9 Officer's canine performed a sweep of the exterior of the vehicle and did a passive sit on the driver's side front door, which the K-9 Officer stated was the canine's signal that it detected the presence of narcotics inside the vehicle. Accordingly, the vehicle was seized and towed to the Metropolitan Police Department's Fourth District Station, located in Washington, D.C.

23. Based on my investigation into ROBEY which includes surveillance, execution of search warrants on cell phones seized from him, conversations with witnesses, and a review of ROBEY's social media, I know that ROBEY drives many different types of vehicles. The vehicles ROBEY drives are usually registered in the names of family members or those close to him. For example, the Infiniti ROBEY was driving at the time of his November 19, 2017 arrest was registered to an individual I know to be a family member of ROBEY's. Likewise, when arrested on May 2, 2018, ROBEY claimed that the Lexus key in his pocket belonged to a vehicle registered to his girlfriend.

24. Based on the foregoing, I submit that there is probable cause to believe that the TARGET VEHICLE belongs to and/or is used by ROBEY and contains evidence relating to the TARGET OFFENSES. As discussed above, ROBEY is known to keep large quantities of narcotics in his vehicles. Moreover, ROBEY's claim that the Lexus key he possessed went to a vehicle that was parked in Maryland, despite a similar vehicle, registered to the same individual,

being located less than a block away demonstrates, in my experience, an intent by ROBEY to conceal the vehicle's location to prevent law enforcement from locating it. Finally, the canine's exterior sweep and indication as to the presence of narcotics, alone, establishes probable cause that the vehicle may contain narcotics.

## CONCLUSION

25. I submit that this affidavit supports probable cause for the warrant to search the "TARGET VEHICLE," described in Attachment A, a vehicle belonging to ROBEY, to seize the items described in Attachment B.

_____
Catherine Hanna, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this \_\_\_\_ day of May, 2018.

_____
Honorable G. Michael Harvey
United States Magistrate Judge
For the District of Columbia

## ATTACHMENT A (TARGET VEHICLE)

*Property to be Searched*

The property to be searched is a blue Lexus ES 350, bearing Virginia Temporary Tag MS22261 and VIN Number JTHBK1GG3F2168965 that is currently located at the Fourth District Station of the Metropolitan Police Department. A photograph of the vehicle is depicted below.



## **ATTACHMENT B**

*Property to be Seized*

The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of: possession with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to commit such offense, in violation of 21 U.S.C. § 846 (collectively, the "TARGET OFFENSES"), as described in the search warrant affidavit, including, but not limited to:

1. Drugs and drug paraphernalia, and items used in the sale, transfer, transportation, packaging of illegal narcotics substances, and also including scales, butcher paper, boots, plastic wrap, plastic bags, tape, cigarette papers, pipes, hypodermic needles and syringes, written articles on the use and effects of narcotics, diluents and cutting agents, which is evidence of the TARGET OFFENSES.

2. Weapons, including but not limited to revolvers, semi-automatic pistols, rifles and ammunition, ammunition, magazines, bulletproof vests, and firearms-related paraphernalia including, but not limited to, gun-cleaning kits, gun-sights, holsters, receipts and documentation for the purchased of same, and related firearm paraphernalia, which constitute tools for the commission of the TARGET OFFENSES.

3. Documents related to or memorializing the ordering, purchasing, storage, transportation and sale of controlled substances, including U.S. currency used in the purchase and sale of controlled substances, buyer lists, seller lists, pay-owe sheets and records of sales, log books, drug ledgers, personal telephone/address books of customers and suppliers, rolodexes, telephone answering pads, bank and financial records, records relating to domestic and foreign travel such as tickets, passports, visas, credit card receipts, travel schedules, receipts and records, trucker log books and storage records, such as storage locker receipts and safety deposit box rental records, which is evidence of the TARGET OFFENSES, proceeds of the TARGET OFFENSES, and contain evidence of the TARGET OFFENSES.

4. Books, records, receipts, notes and other papers relating to the transportation, ordering, purchase, and distribution of controlled substances and the transportation, ordering, purchase and transfer of firearms and ammunition, which is evidence of the TARGET OFFENSES.

5. Address and/or telephone books and papers reflecting names, addresses and/or telephone numbers, which constitute evidence of customers, distributors, conspirators, and potential witnesses of violations of the TARGET OFFENSES.

6. Books, records, receipts, bank statements, money drafts, letters of credit, money orders and cashier's checks, passbooks, bank checks, safe deposit box keys, and any other

items evidencing the obtaining, secreting, transfer, concealment, storage and/or expenditure of money, which constitute records and proceeds of the TARGET OFFENSES.

7. United States currency, precious metals, jewelry and financial instruments, stocks and bonds, which constitute proceeds of the TARGET OFFENSES.

8. Photographs, in particular photographs of co-conspirators, assets, firearms, and controlled substances, which constitute evidence of the TARGET OFFENSES.

9. Cellular telephones, computers, laptops, I-Pads, DVDs, hard drives, and electronic store devices, and receipts reflecting their ownership and use, which contain records of the commission of the TARGET OFFENSES.

10. Safes, both combination and key type, and their contents, which can contain evidence of the commission of the TARGET OFFENSES or proceeds from the commission of the TARGET OFFENSES; and

11. Indicia of ownership, including, receipts, invoices, bills, canceled envelopes and keys, which provides evidence of identity as to individuals committing the TARGET OFFENSES.